**STATE of Iowa, Appellee,**

v.

**Ronald Truman HOBBS, Appellant.**

No. 00–1750.

Supreme Court of Iowa.

Dec. 18, 2002.

Webb L. Wassmer of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Todd Holmes, County Attorney, and T.J. Braunschweig, Assistant County Attorney, for appellee.

LARSON, Justice.

Ronald Hobbs was convicted of bootlegging, maintaining a liquor nuisance, and failure to have a beer permit in violation, respectively, of Iowa Code sections 123.59, 123.60, and 123.22 (1999). The defendant appealed. We conclude there was insufficient evidence to sustain the convictions and therefore reverse and remand for dismissal.

## I. *Facts and Prior Proceedings.*

On July 26, 1999, Scott Beach (the defendant's nephew) and Dustin Hobbs (the defendant's son) provided beer to RAGBRAI riders from a tent located in rural Kossuth County. Defendant Hobbs was not at the tent at all that day. The beer, according to the defendant, was free, but jars labeled "tips" were placed on the counter in the tent. Hobbs had applied for a beer permit, but the permit was denied. After the denial, the owner of the property with whom Hobbs had contracted to set up the tent told him he could have a party for the RAGBRAI riders on the land and give the beer away. Beach testified that the "state people" told him that they could give the beer away but receive tips for their service. This contention was neither confirmed nor denied by the State's witnesses. The Kossuth County Sheriff testified that he told Beach to close down the tent, since he was not allowed to sell, dispense, or give away alcohol. He said that Beach told him they were not selling beer; they were just accepting tips for their service.

Hobbs was convicted, following a jury trial, of all three offenses. He was sentenced to 180 days on each of the offenses to be served concurrently with 150 days of the sentences to be suspended on each count. He was ordered to pay a $1000 fine and surcharge of $300 on each count. He was also ordered to complete a counseling

program, but the State now concedes that was error.

## II. *The Bootlegging Charge.*

■ Section 123.59 provides:

Any person who, acting individually, or through another acting for the person, keeps or carries on the person, or in a vehicle, or leaves in a place for another to secure, any alcoholic liquor, wine, or beer, with intent to sell or dispense the liquor, wine, or beer, by gift or otherwise in violation of the law, or who, within this state, in any manner, directly or indirectly, solicits, takes, or accepts an order for the purchase, sale, shipment, or delivery of alcoholic liquor, wine, or beer in violation of law, or aids in the delivery and distribution of alcoholic liquor, wine, or beer so ordered or shipped, or who in any manner procures for, sells, or gives alcoholic liquor, wine, or beer to a person under legal age, for any purpose except as authorized and permitted in this chapter, is a bootlegger and subject to the general penalties provided by this chapter.

Bootlegging was instructed under three alternative means of commission, as provided by section 123.59: (1) keeping with intent to sell or dispense beer by gift or otherwise in violation of the law; or (2) directly or indirectly soliciting, taking, or accepting orders for the purchase, sale, shipment, or delivery of beer in violation of the law; or (3) aiding in the delivery of beer to a person under the legal age.

The jury returned a general verdict of guilty on the bootlegging charge without identifying the alternatives on which the jury relied. The State concedes it had presented no evidence of furnishing beer to underage drinkers, so that alternative had no support in the record. The remaining means of committing bootlegging require proof that the defendant sold or otherwise delivered the beer in violation of the law. For reasons discussed later, the State's proof failed to establish a sale or gift in violation of the law.

## III. *The Liquor Nuisance Charge.*

Section 123.60 defines nuisance as:

The premises where the unlawful manufacture or sale, or keeping with intent to sell, use or give away, of alcoholic liquors, wine, or beer is carried on, and any vehicle or other means of conveyance used in transporting liquor, wine, or beer in violation of law, and the furniture, fixtures, vessels and contents, kept or used in connection with such activities are nuisances and shall be abated as provided in this chapter.

The gist of the nuisance offense is the sale "or keeping with intent to sell, use or give away" the beer. The State contends the beer was kept with the intent to sell it, or as an alternative argument, it was kept on the premises with the intent to give it away.

■ A. *The evidence of sale.* The State introduced evidence that RAGBRAI riders were observed receiving beer and placing money in the tip jar, but taking this evidence in the light most favorable to the verdict, it does not establish more than what the defendant concedes—beer was dispensed and money was placed in the tip jars. While one could assume that a "tip" was required, making the transaction a sale, there was no evidence to support this assumption. Witnesses for the State testified that all of the people they observed drinking beer in or around the tent put money in the tip jar. However, there was no evidence to show they were required to do so. The State did not present any evidence through controlled buys by law enforcement personnel, any of the beer-tent patrons, or any other witnesses that

this was the fact. We believe the record simply does not support a finding that beer was sold.

■ **B.** *The gift alternative.* The State argues that the statute also prohibits the keeping of beer "with intent to give [it] away." While on its face the statute appears to cover any case in which a defendant gives beer away or keeps it with the intent to give it away, the statute cannot reasonably be interpreted in such a broad manner. To do so would criminalize a social host's possession of beer with the intent to serve it to guests.

■ We believe the "giving away" language of section 123.60 must be given a reasonable reading and must be limited to those cases in which the gift itself is illegal—such as giving beer to a minor or to an intoxicated person. Merely keeping beer with intent to give it away does not constitute a liquor nuisance.

The charge of maintaining a liquor nuisance, therefore, cannot be sustained under either the sale or gift alternative.

#### IV. *The Charge of Failure to Have a Permit.*

■ Iowa Code section 123.122 provides:

> A person shall not manufacture for sale or sell beer at wholesale or retail unless a permit is first obtained as provided in this division or, a liquor control license authorizing the retail sale of beer is first obtained as provided in division 1 of this chapter. A liquor control license holder is not required to hold a separate class "B" beer permit.

For the reasons previously discussed, there was inadequate evidence to support a finding that the defendant sold beer. For this reason, a charge of failure to have a permit to sell beer cannot be sustained.

#### V. *Disposition.*

Because the charges cannot be affirmed for the reasons discussed, we reverse and remand for dismissal of the charges.

**REVERSED AND REMANDED.**